Randy A. VEE, et al., Appellants (A08–1695), Respondents (A08–1702),

v.

Badri Abas IBRAHIM, et al., Defendants (A08–1695), Respondents (A08–1702),

Ernest Meyer Crouzer, et al., Appellants (A08–1702), American President Lines, Ltd., Respondent.

Nos. A08–1695, A08–1702.

Court of Appeals of Minnesota.

July 14, 2009.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, and Robert L. Lazear, James R. Schwebel, Schwebel, Goetz & Sieben, P.A., Minneapolis, MN, for appellants Vee, et al.

Brian A. Wood, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for defendants/appellants Ernest Meyer Crouzer, et al.

John M. Bjorkman, Angela Beranek Brandt, Larson King, LLP, St. Paul, MN, for respondent American President Lines.

Considered and decided by ROSS, Presiding Judge; SCHELLHAS, Judge; and LARKIN, Judge.

## OPINION

ROSS, Judge.

A semitruck and its trailer jackknifed after rear-ending a delivery truck, causing the trailer to swing into the oncoming lane and to strike and seriously injure motorcyclist Randy Vee. The semitruck and semitrailer are separately owned. Randy Vee sued the two truck drivers and their employers, and he sued the semitrailer's owner. The delivery truck driver's employer brought a crossclaim against the semitrailer's owner. The claims and crossclaims against the semitrailer's owner depend on the owner being vicariously liable for the semitruck driver's actions. The district court dismissed the claims against the semitrailer's owner, holding that a semitrailer is not a "motor vehicle," as that term is used in the motor vehicle vicarious liability statute, Minnesota Statutes section 169.09, subdivision 5a. Because we also hold that a semitrailer is not a motor vehicle, we affirm.

## FACTS

Randy Vee had just cleared an intersection on his motorcycle when he was struck by an oncoming semitrailer that swung into his lane. The semitrailer was being pulled by a semitruck that had rear-ended a delivery truck, causing the truck-trailer rig to jackknife. Vee sued the semitruck's driver, Badri Ibrahim, and the delivery truck's driver, Ernest Crouzer, along with their employers, Freightways Corporation and Northern Plains Dairy, respectively. Vee later amended his complaint to add American President Lines (APL) as a defendant. APL owns the semitrailer.[1] Vee

---

1. The statute imposes vicarious liability on the "owner" of a motor vehicle. We refer to

sought to hold APL vicariously liable for Ibrahim's allegedly negligent driving. Crouzer amended his answer to seek indemnification or contribution from APL under the same theory. APL moved for summary judgment, arguing that a semi-trailer's owner is not vicariously liable for the actions of the semitruck's driver. The district court agreed and dismissed the claims against APL in a judgment that is appealable under Minn. R. Civ.App. P. 103.03(a) and 104.01. Vee and Crouzer filed separate appeals, which we have consolidated.

## ISSUES

I. Does the vicarious liability statute, Minnesota Statutes section 169.09, subdivision 5a (2008), incorporate the definition of "motor vehicle" as set forth in Minnesota Statutes section 169.011?

II. Is a semitrailer a motor vehicle within the meaning of the vicarious liability statute, section 169.09, subdivision 5a?

## ANALYSIS

### I

██ Vee and Crouzer contest the district court's summary judgment decision. We review summary judgment decisions for whether genuine issues of material fact remain, and for whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Both Vee and Crouzer contend that Minnesota Statutes section 169.09, subdivision 5a (2008), renders APL vicariously liable for accidents involving APL's trailer. The statute provides that "[w]henever any motor vehicle shall be operated within this state, by any person

other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner." Minn. Stat. § 169.09, subd. 5a. The outcome of these appeals depends on whether the trailer that struck Vee qualifies as a "motor vehicle" under this vicarious liability statute.

██ This court reviews matters of statutory construction de novo. *In re Kleven,* 736 N.W.2d 707, 709 (Minn.App.2007). The first concern when construing a statute is whether it is facially clear. *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). The object of statutory construction is to give effect to the legislature's intent. *Id.* But if the language is unambiguous, no further investigation is warranted and we discern legislative intent only from the statute's plain language. *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999); *see* Minn.Stat. 645.16 (2008).

The legislature has provided a definition for "motor vehicle" that, by virtue of its language and placement, appears to apply to the vicarious liability statute. Minnesota Statutes section 169.011, subdivision 42 (2008), defines motor vehicle as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires," subject to exceptions not relevant here. By express description, the definitions of section 169.011 apply to chapter 169. *Id.,* subd. 1.

Despite the express relationship between sections 169.09 and 169.011, Vee and Crouzer argue that we should apply a definition of "motor vehicle" found elsewhere in the statutes. The legislature has provided a different definition of motor vehicle

---

APL as an "owner" because APL does not dispute that its long-term lease renders it an

"owner" for purposes of determining its liability under the statute.

in Minnesota Statutes section 65B.43 (2008). Section 65B.43, which is part of the Minnesota No–Fault Automobile Insurance Act, defines a "motor vehicle" as

every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, *and includes a trailer with one or more wheels, when the trailer is connected to or being towed by a motor vehicle.*

(Emphasis added.) But by its terms, section 65B.43 definitions apply to sections 65B.41 through 65B.71. *Id.*

The statutory arrangement strongly suggests that section 169.011's definition of motor vehicle applies to section 169.09, since both sections share the same chapter. But Vee and Crouzer contend that the statute's history leads to a different application. In 2005, the legislature instructed the revisor to renumber the vicarious liability statute. 2005 Minn. Laws ch. 163, § 88, at 1877. Before the legislature relocated the statute to chapter 169, it had been codified at section 170.54 (2004). The law instructing the change did not revise the language of the statute, only its location in the compilation of laws. And before it was relocated, this court had concluded that the definition of motor vehicle found in section 65B.43 applied to the vicarious liability statute, holding that the definition found in chapter 169 did *not* apply. *Great Am. Ins. Co. v. Golla,* 493 N.W.2d 602, 605 (Minn.App.1992). The *Golla* court had to apply *some* definition to the term, and choosing the correct definition was not directed by statutory structure because the operative provision was in a chapter that included no definition. We reasoned that the legislature repealed an applicable definition of "motor vehicle" and simultaneously enacted the no-fault act's definition located at section 65B.43. *Id.* at 604. So despite the organizational ambiguity, this court held that the "motor vehicle" definition from 65B.43 applied to the vicarious liability statute that was codified 100 chapters later. *Id.* at 604–05.

On this background, Vee and Crouzer argue that the legislature did not intend its 2005 instruction to the revisor to cause a substantive, "radical" change to the vicarious liability statute. But we reach a different conclusion.

■ The statutes appearing in Minnesota Statutes are *prima facie evidence of* the law, but the enactments of the legislature *are* the law. *Granville v. Minneapolis Pub. Sch., Special Sch. Dist. No. 1.,* 732 N.W.2d 201, 208 (Minn.2007). The supreme court's treatment of a similar issue in *Granville* guides our approach here. In *Granville,* the supreme court examined the effect of a law repealing an existing law's sunset clause after the law's expiration date had passed. *Id.* at 204–06. The court reasoned that the repealing law was merely "part of a bookkeeping effort to remove obsolete provisions from the statute books." *Id.* at 205. The court noted that the act did not express any intent to substantively change the law. *Id.* It concluded that the language of the repealing law was unambiguous regarding its direct effect on the law repealed. *Id.* But the court determined that the law *was* ambiguous with respect to the "far from axiomatic," indirect effects of the repeal of a sunset provision. *Id.* at 206. In light of the ambiguity, the court considered the legislature's intent. *Id.*

The supreme court's approach in *Granville* offers a rough template for us. The legislation recodifying the statute describes itself as, among other things, "[a]n act relating to data practices" and as de-

signed to "amend [ ] Minnesota Statutes 2004, section[ ] ... 169.09 ... by adding subdivisions[.]" 2005 Minn. Laws ch. 163, at 1832. Several consecutive subdivisions of the act directly modified and added subdivisions of section 169.09. *Id.* §§ 60–75, at 1863–67. In a separate, nonconsecutive section of the act, the legislature instructed the revisor to renumber two sections of chapter 170, and it assigned them to chapter 169.09. *Id.* § 88, at 1877. Chapter 170 is now empty, every section having either been repealed or relocated.

The language plainly requires the revisor to renumber the vicarious liability statute from 170.54 to 169.09, subdivision 5a. *Id.* But whether the legislature intended the change to modify the vicarious liability law substantively is not clear from the law's language, and the law is ambiguous in that regard. *See Granville,* 732 N.W.2d at 206 (finding ambiguity regarding the indirect effect of a law repealing a sunset provision). In light of that ambiguity, we must consider whether the legislature intended the relocation to bear on which definition to apply.

To discern the legislature's intent, this court considers, among other things, the law's object, "the occasion and necessity for the law," any former law, and the consequences of an interpretation. Minn. Stat. § 645.16 (2008); *Nestell v. State,* 758 N.W.2d 610, 613 (Minn.App.2008). When the legislature simultaneously repeals and reenacts a law, it intends for the law to remain in continuous effect. Minn.Stat. § 645.37 (2008). But in directing its placement as it did here, the legislature has relocated the law within the scope of a specifically defining statute.

The legislature was aware that "motor vehicle" was defined by section 169.011 when it relocated the vicarious liability statute to the same chapter. This is strong evidence that the legislature intend-ed the statute to be defined accordingly. If the legislature intended for chapter 65B's motor-vehicle definition to apply to the vicarious liability statute, it had many means to indicate that inevident intention. It could have moved the statute within the expressly stated scope of the chapter 65B definitions. It could have amended the statute to expressly refer to the 65B definition. Or it could have left things as they were, tacitly acquiescing to this court's construction in *Golla.* Instead, the legislature adopted a statutory definition for "motor vehicle" where previously none existed within the chapter that assigns vicarious liability.

Vee and Crouzer contend that the legislature would have been more clear if it intended to reject the definition that the *Golla* court borrowed from chapter 65B. But we cannot imagine what more would be required of the legislature to make this intention clear. Given that relocation within the scope of chapter 169's definition so strongly suggests adoption of the chapter 169 definition, a different intention would require an express legislative statement. *See Granville,* 732 N.W.2d at 205 ("[W]e must presume that the legislature generally knows what it is doing."). Although it is not implausible that the law recodifying the vicarious liability statute was entirely a bookkeeping exercise, it does not seem that it was. The act made substantial changes to section 169.09, unlike the *Granville* repealer.

What appears after the recodification is new framework informing our interpretation of the vicarious liability statute. Before the legislature acted, no definition of "motor vehicle" clearly applied, so this court borrowed a definition from elsewhere. *Golla,* 493 N.W.2d at 604–05. As it stands now, a statute defining "motor vehicle" unambiguously applies to the vicarious liability statute. We conclude that the intent of the legislature was to abro-

gate *Golla* implicitly. We hold that the definition of motor vehicle in chapter 169 applies to the vicarious liability statute.

## II

■ Because the definition of "motor vehicle" appearing in section 169.011 applies, a semitrailer does not qualify as a motor vehicle under the vicarious liability statute. According to the definition, a motor vehicle is "self-propelled" or "powered by trolley wires." Minn.Stat. § 169.011, subd. 42. A semitrailer is neither. Our holding that a semitrailer is not a motor vehicle complements the statutory definition of "semitrailer," which is a "[vehicle] designed [to be] used in conjunction with a truck-tractor" and "includes a trailer drawn by a truck-tractor semitrailer combination." Minn.Stat. § 169.011, subd. 72. A semitrailer therefore remains merely a *vehicle* even when it is drawn by a *motor vehicle.*

Because the motor-vehicle vicarious liability statute does not impose vicarious liability on the owners of semitrailers, the district court correctly concluded that APL is not vicariously liable for Ibrahim's driving.

## DECISION

When the legislature moved the vicarious liability statute to chapter 169, it effectively subjected the statute's operative provision to the definition of motor vehicle awaiting it in that chapter. Because a semitrailer does not meet the definition of motor vehicle in section 169.011, the vicarious liability statute does not provide a basis to impose vicarious liability on semitrailer owners for the actions of semitruck drivers. We therefore affirm.

**Affirmed.**